# 2001 DTA 153

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

DIANA L. CORREA POL
Demandante-Peticionaria

v.

JULIO C. HERNANDEZ SANABRIA
Demandado-Recurrido

v.

JULIO C. HERNANDEZ SANABRIA
Interventor

Núm. KLCE-00-00157

San Juan, Puerto Rico, a 23 de abril de 2001

Panel integrado por su Presidente, el Juez Negrón Soto,
y los Jueces Segarra Olivero y Negroni Cintrón

Negrón Soto, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

La demandante, Sra. Diana L. Correa Pol, en lo sucesivo señora Correa, y el interventor Sr. Julio César Hernández Correa, en adelante señor Hernández, hijo, ambos recurrentes, nos solicitan que revoquemos la resolución dictada por el Tribunal de Primera Instancia el 12 de noviembre de 1999, archivada en autos el 7 de diciembre siguiente. En dicho dictamen se le impuso al demandado-recurrido, Sr. Julio César Hernández

Sanabria, en lo sucesivo señor Hernández, una pensión alimentaria de $300 mensuales a favor de Hernández, hijo.

Presentada la exposición narrativa de la prueba y sometido el alegato de los recurrentes, estamos preparados para resolver. Procede expedir el auto de *certiorari* para modificar la resolución recurrida y devolver el caso al Foro de instancia para la continuación de los procedimientos. Examinemos los hechos pertinentes.

## I

El 18 de junio de 1985, se decretó el divorcio entre la señora Correa y el señor Hernández. A ella se le concedió la patria potestad y custodia del hijo de ambos y a él se le impuso una pensión alimentaria de $400 mensuales. El 6 de agosto de 1990, el Tribunal recurrido modificó la pensión alimentaria a favor de Hernández, hijo, en $180 quincenales, es decir $360 mensuales.

El 29 de junio de 1995, la señora Correa, en representación del menor de edad Hernández, hijo, planteó que éste comenzaba una carrera universitaria y enfrentaba problemas de salud, por lo que procedía se aumentara la pensión alimentaria al mínimo de $400. En escrito del 22 de agosto de 1997, Hernández, hijo, solicitó se le permitiera ser acumulado como parte en el pleito y que no se eximiere al señor Hernández del pago de la pensión alimentaria.

Mediante Resolución del 4 de septiembre de 1997 se permitió acumular como parte indispensable en el caso a Hernández, hijo. El aumento de la pensión alimentaria se refirió a la Examinadora de Pensiones Alimentarias para un señalamiento, el que nunca se hizo.

El 28 de julio de 1998, los recurrentes presentaron una "*Moción Urgente*", donde alegaron que desde el mes de junio de 1995 habían solicitado "*un aumento de pensión alimentaria e inexplicablemente no se ha celebrado vista para completar dicha solicitud*". Posteriormente, el Tribunal de Instancia señaló una vista para el 23 de noviembre del mismo año.

Luego de varias suspensiones, el 4 de agosto de 1999 se celebró la vista para considerar el aumento de pensión alimentaria. Los recurrentes afirmaron que en ésta debían dilucidarse dos asuntos, a saber; i) la petición de aumento de la pensión que presentó la señora Correa el 29 de junio de 1995 cuando Hernández, hijo, era menor de edad, y ii) la solicitud de pensión alimentaria que presentó Hernández, hijo, el 22 de agosto de 1997, ya siendo mayor de edad y estudiante universitario. Ante tales planteamientos, el Foro *a quo* resolvió que solamente atendería la solicitud de pensión alimentaria que presentó Hernández, hijo, luego de advenir a la mayoría de edad. █ Posteriormente, en dicha vista declararon los Sres. Hernández, hijo, y Hernández y la señora Correa.

El 12 de noviembre de 1999, el Foro de instancia emitió una Resolución donde le impuso al señor Hernández "*el pago de una pensión alimentaria de $300 mensuales para beneficio de su hijo Julio César Hernández.*" Dicha pensión es retroactiva al 28 de julio de 1998. █ Además, dispuso que la señora Correa continuaría sufragando la diferencia de los gastos reales de su hijo no cubiertos por la pensión impuesta al señor Hernández.

En la vista celebrada, Hernández, hijo, declaró que sus gastos mensuales ascendían a $1,129.66; que estaba cursando estudios conducentes al grado de Maestría en Economía en el recinto de Río Piedras; que el costo de los libros era alto; que vivía permanentemente con su madre, pero se hospedaba en Río Piedras y que ésta cubría la mayoría de sus gastos. Posteriormente, en su contrainterrogatorio desglosó una serie de gastos mensuales que sumaron $699, y afirmó que su madre, la señora Correa, tenía un ingreso de $2,200 mensuales para un total de $26,400 anuales.

El señor Hernández declaró que es abogado; casado con otra dama; que tiene otros tres hijos que estudian a

nivel elemental; que es propietario de una residencia libre de gravámenes en Aguadilla; que tuvo un ingreso bruto ajustado de $33,291 en el 1998, que equivale a $2,774 mensuales, y que sus gastos mensuales ascendían a más de $4,000 mensuales. ■

La señora Correa declaró que trabajaba como técnico legal en la Oficina Regional de Ponce de la Administración de Reglamentos y Permisos y que reconocía su obligación de proveerle sustento a su hijo en proporción a sus ingresos con relación a los del señor Hernández.

Imputan los recurrentes al Tribunal de Primera Instancia que erró al:

*"1. Determinar que la pensión alimentaria que procede en este caso es una por la cantidad de $300;*

*2. Declarar Sin Lugar la Moción Solicitando Determinaciones de Hechos y Conclusiones de Derecho Enmendadas y Adicionales y Solicitud de Reconsideración, radicada por la parte demandante-recurrente.*

*3. Determinar, como fecha de efectividad de la pensión, la fecha de 28 de julio de 1998 y no la fecha de radicación, 22 de agosto de 1997."*

## II

Consideremos los dos primeros errores que tienen que ver con la pensión alimentaria impuesta de $300.

El Artículo 19 de la Ley de Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 518, en su parte pertinente, dispone:

*"...*

*En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en este capítulo.*

*Se presumirá que la pensión alimentaria resultante de la aplicación de las guías es justa, adecuada y en el mejor interés del menor. Dicha presunción podrá ser controvertida por cualesquiera de las partes utilizando los criterios establecidos por el Estado Libre Asociado de Puerto Rico. Si a base de la evidencia presentada para rebatir la presunción, el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores:*

*(1) Los recursos económicos de los padres y del menor;*

*(2) la salud física y emocional del menor, sus necesidades y aptitudes educacionales o vocacionales;*

*(3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;*

*(4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y*

*(5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.*

*También hará constar cuál hubiera sido el monto de la pensión resultante al aplicar las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico adoptadas, según dispone este capítulo.*

...

*Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se radicó la petición de alimentos o se emitió la orden por el Administrador. Bajo ninguna circunstancia, el tribunal o el Administrador reducirá la pensión alimentaria sin que el alimentante haya radicado una petición a tales efectos, previa notificación al alimentista o acreedor. La reducción de la pensión alimentaria será efectiva desde la fecha en que el Tribunal o el Administrador decida sobre la petición de reducción o el Administrador modifique la pensión establecida conforme al reglamento de revisión periódica que se adopte. Todo pago o plazo vencido bajo una orden de pensión alimentaria emitida a través del procedimiento administrativo expedito o a través del procedimiento judicial establecido en esta ley constituye desde la fecha de su vencimiento, una sentencia para todos los efectos de ley y, por consiguiente, tendrá toda la fuerza, efectos y atributos de una sentencia judicial, incluyendo la capacidad de ser puesta en vigor, acreedora a que se le otorgue entera fe y crédito en Puerto Rico y en cualquier Estado y no estará sujeta a reducción retroactiva en Puerto Rico, ni en ningún Estado, excepto que en circunstancias extraordinarias, el tribunal o el Administrador podrá hacer efectiva la reducción a la fecha de la notificación de la petición de reducción al alimentista o acreedor o de la notificación de la intención de modificar, según sea el caso. No se permitirá la reducción retruactiva del monto de la deuda por concepto de las pensiones alimentarias devengadas y no pagadas.*

*(Enfasis nuestro.)*

...".

Cuando la obligación del pago de una pensión alimentaria corresponde a dos o más personas, se tiene presente la aplicación de la regla de la proporcionalidad. Esta norma postula que se repartirá el pago de la pensión o alimentos en forma proporcional a los bienes o recursos que posea cada obligado. Véase, Art. 145 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 564; *Mundo v. Cervoni*, 115 D.P.R. 422 (1984); *Luzunaris v. Díaz*, 23 D.P.R. 663 (1916).

### III

De la Resolución del Foro de Instancia no surge cuál fue el cómputo o análisis utilizado para determinar que la pensión alimentaria de Hernández, hijo, debía ser la cantidad de $300. De hecho, no señaló si hizo uso de las guías para determinar y modificar las pensiones alimentarias. Tampoco determinó que su aplicación era injusta, inadecuada o que hubieran unos hechos o circunstancias que lo justificaran. Así, su determinación no cumplía con lo dispuesto en los párrafos segundo y tercero del Artículo 19, *supra*.

Por otro lado, el Tribunal *a quo,* en su dictamen, redujo la pensión alimentaria anterior de $360 a $300 mensuales, aun cuando aparentemente los gastos de Hernández, hijo, habían aumentado. Esto es contrario a lo dispuesto en el citado Artículo 19, *supra*, que, en lo pertinente, dispone que *"bajo ninguna circunstancia, el tribunal o el Administrador reducirá la pensión alimentaria sin que el alimentante haya radicado una petición a tales efectos, previa notificación al alimentista o acreedor"*. (Enfasis nuestro.)

Ciertamente, en el caso de marras, el señor Hernández no solicitó reducción alguna de la pensión. Independientemente de ello, y como correctamente determinó el Foro de instancia en su resolución, el señor Hernández *"cuenta con la capacidad y recursos económicos suficientes para pagar una pensión alimentaria a favor de su hijo Julio C. Hernández"*. Por ello, sólo restaba al Tribunal *a quo* determinar los gastos de Hernández, hijo, y fijar la proporción en que debía contribuir la señora Correa en consideración a su ingreso y al del señor Hernández, quien no tenía limitación alguna.

Como aceptaran el señor Hernández y la señora Correa, éstos tienen la obligación de sufragar los gastos de su hijo. De la exposición narrativa de la prueba surge que los ingresos del señor Hernández eran más de $2,774. mensuales, mientras que los de la señora Correa sólo eran $2,200 mensuales. Obviamente, el señor Hernández tiene mayores recursos económicos en comparación a la señora Correa. De otro lado, los gastos de Hernández, hijo, ascendían a más de $699 mensuales.

En consecuencia, no comprendemos porqué el Tribunal de Instancia dictaminó que la señora Correa debía continuar pagando la diferencia entre la pensión alimentaria de $300 y los gastos reales de su hijo, los cuales ascendían a más de $699. Así, la señora Correa quedó obligada a sufragar $399, una cantidad mayor a la del señor Hernández, quien tenía mayores ingresos y, a los efectos de este caso, su capacidad económica para hacerlo no tenía límite.

## IV

Por último, examinemos si el Tribunal de instancia erró *"al determinar como fecha de efectividad de la pensión la fecha de 28 de julio de 1998 y no la fecha de radicación, 22 de agosto de 1997"*.

El Artículo 19, *supra*, dispone que en cuanto a los casos de reducción de pensión alimentaria, éstas serán efectivas *"desde la fecha en que el Tribunal o el Administrador decida sobre la petición de reducción"*. En el caso de marras, aunque se solicitó un aumento de pensión, el resultado del dictamen recurrido fue reducir la misma de $360 a $300 mensuales. De la prueba presentada no surge ninguna razón que justifique que la pensión impuesta fuera efectiva retroactivamente a la fecha de su solicitud.

Así, bajo las circunstancias de este caso, es forzoso concluir que la fecha de efectividad de la pensión alimentaria de $300 tenía que ser el 12 de noviembre de 1999, día en que se emitió la Resolución recurrida, la cual al dejarse sin efecto en este aspecto, conlleva que quede en vigor la anterior pensión de $360 hasta que el Foro recurrido vuelva a emitir un nuevo dictamen.

## V

Por los fundamentos antes expuestos, se modifica la resolución recurrida y devolvemos el caso al Tribunal Primera de Instancia para la continuación de los procedimientos en forma compatible con lo aquí dispuesto.

Notifíquese de inmediato.

Lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 153

1. El Foro de Instancia se declaró sin jurisdicción ante la solicitud de pensión alimentaria que presentó la señora Correa en junio de 1995. En su resolución del 4 de agosto de 1999, razonó que Hernández, hijo, era *"...mayor de edad en la actualidad. El Tribunal se declara sin jurisdicción"*. Ante dicha resolución se interpuso el recurso de *certiorari* número KLCE-99-00993, donde recayó sentencia revocando la resolución recurrida y devolviendo el caso para que considerara la referida solicitud. La recurrente informó en su moción del 1 de mayo de 2000 que la controversia en este recurso de *certiorari* era independiente a lo resuelto en el KLCE-99-00993 y solicitó que se continuaran los procedimientos de manera independiente.

2. Resolución recurrida, pág. 7.

3. En su declaración sólo expuso con especificidad gastos mensuales ascendentes a $1,570 más $324 del pago de un vehículo de motor, para un total de $1,894.